IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NEAL R. PRICE,

      **Plaintiff,**

v.

                                              **Civil Action No. 3:14CV619**

LORETTA E. LYNCH,[1]
Attorney General of the United States,[2]

      **Defendant.**

## MEMORANDUM OPINION

Before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1).[3]  (ECF No. 6.)  Plaintiff Neal R. Price, proceeding *pro se*,

responded, and Defendant replied.[4]  (ECF Nos. 21–22.)  The Court dispenses with oral argument

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), this Court directs the Clerk of Court to terminate Eric H. Holder as a defendant and to substitute Loretta E. Lynch, who now serves as Attorney General of the United States, as the defendant in this action.

[2] Price names "Eric H. Holder[,] Jr., the Attorney General for the United States of America, the Chief Executive Officer responsible for the actions of the United States Department of Justice, the Federal Bureau of Prisons" as the defendant.  (Compl. 1, ECF No. 1.)  The Court construes Price's Complaint as one against the Attorney General, now Loretta Lynch, in her official capacity.  A suit against Lynch in her official capacity is a suit against the United States. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

[3] "[A] party may assert the following defenses by motion:  **(1)** lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).
Defendant also moves to dismiss "for failure to state a claim upon which relief can be granted" pursuant to Fed. R. Civ. P. 12(b)(6).  Because the Court lacks subject matter jurisdiction over the alleged claims, this alternative basis for dismissal becomes moot. *Harrison v. U.S. Social Sec. Admin.*, No. 3:13cv435, 2014 WL 29042, at *1 (E.D. Va. Jan. 2, 2014).

[4] Defendant provided Price with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  (ECF No. 8.)  Price acknowledged on the record that he received Defendant's filings when he attempted to file a response labelled "Plaintiff's Motion to Dismiss."  (Pl.'s Mot. Dismiss 2, ECF No. 13.)

because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process.[5]  Accordingly, this matter is now ripe for disposition.  For the reasons that follow, the Court will grant Defendant's Motion to Dismiss (ECF No. 6) and dismiss the Complaint for lack of subject matter jurisdiction.

## I.  Standards of Review

### A.    Lack of Subject Matter Jurisdiction: Rule 12(b)(1)

In a motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper.  *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways.  First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a challenge, a court assumes

---

[5] Indeed, the record contains ample, not simply adequate, briefing.  On March 17, 2015, the Court provided Price with a second *Roseboro* notice, giving him additional time to file a response to Defendant's Motion to Dismiss and informing him that it would construe his own "Motion to Dismiss" (ECF No. 13) as his response to Defendant's motion unless Price filed a corrected opposition.  (ECF No. 20.)  On March 19, 2015, Price submitted a Corrected Brief in Opposition to Motion to Dismiss ("Response").  (ECF No. 21.)

On March 30, 2015, after Defendant replied, Price filed "Plaintiff's Response to the New Assertions in the Defendants Response to the Plaintiff's Filing in Opposition to Motion to Dismiss and the Plaintiff's Motion to Amend" ("Sur-Reply").  (ECF No. 23.)  Price did not obtain leave of court before filing his Sur-Reply, in violation of this Court's local rules.  E.D. Va. Loc. Civ. R. 7(F)(1).  However, in the interest of justice, and after giving Defendant the opportunity to respond, (ECF Nos. 24–25), the Court will consider Price's Sur-Reply.  The Court ordered Price and Defendant to submit supplemental briefs, and both complied.  (ECF Nos. 25–26.)  Finally, Defendant submitted a clarification of Defendant's supplemental brief.  (ECF No. 27.)

the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6)[6] consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

A Rule 12(b)(1) motion may also, as here, challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction intertwine with the facts central to the merits of the dispute, a court should find that jurisdiction exists and resolve any factual dispute on the merits because the jurisdictional attack would then closely mirror a challenge of the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d

---

[6] "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

3

at 1219. A court need not examine jurisdiction in that manner when a plaintiff asserts the claim solely for the purpose of obtaining jurisdiction, or when a plaintiff raises a wholly insubstantial and frivolous claim. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

## B.    Obligation to Construe *Pro se* Pleadings Liberally

District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). However, a *pro se* plaintiff such as Price must nevertheless allege "facts that state a cause of action." *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims" that the litigant failed to raise on the face of the complaint. *Newkirk v. Circuit Court of the City of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

In his Response, Price asserts facts by declaring them "under penalty of perjury . . . true and correct to the best of my information and belief."[7] (Pl.'s Resp. 2, ECF No. 21.)  Such a statement fails to transform the allegations in the affidavit or Complaint into admissible evidence. *Hogge v. Stephens*, No. 3:09cv582, 2011 WL 2161100, at *2–3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief as "mere pleading allegations" (quoting *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2011))).

---

[7] Price's Complaint is unsworn. However, Price's Response restates large portions of his Complaint verbatim "under penalty of perjury." (Pl.'s Resp. 3, ECF No. 21.) The Complaint itself contains 157 numbered paragraphs and spans 41 pages. As stated below, the Court dismisses the Complaint for lack of subject matter jurisdiction.

While the Court could simply weigh evidence to determine jurisdiction, the Court, in the interest of fairness, has treated the statements in Price's Response as pleading allegations. Thus, the Court assumes the well-pleaded factual allegations in the Complaint to be true and views them in the light most favorable to Plaintiff, as would be required for Rule 12(b)(6) review. *See Mylan Labs.*, 7 F.3d at 1134.

4

## C. __Effect of Extrinsic Documents__

The parties have placed numerous extrinsic documents before the Court.[8]  The Court

may consider evidence outside the pleadings on a motion to dismiss for lack of subject matter

jurisdiction without converting the motion to one for summary judgment and will do so here to

resolve Defendant's jurisdictional challenge to the Complaint.  *Richmond, Fredericksburg &*

*Potomac R.R. Co.*, 945 F.2d at 768.  None of the parties contests the authenticity of any of the

---

[8] Price attaches 54 exhibits to his Complaint.  Some of the exhibits reference laws or statements about them, (Compl. Exs. 9, 13), Bureau of Prisons ("BOP") policies and documents, (*id.* Exs. 11–12, 14–19, 33–39, 49, 52–54), and other official government reports and documents, (*id.* Exs. 8, 20, 26, 29–32, 40–47).  One is an exhibit list and another proffers a definition of "ostracism."  (*Id.* Exs. 1, 21.)  Of the 54 exhibits, 15 provide pertinent information specific to Price and his allegations.  (*Id.* Exs. 2–7, 10, 22–25, 27–28, 48, 50–51.)  For ease of reference, the Court employs the page numbers utilized by the CM/ECF docketing system when citing to exhibits attached to the Complaint.

Defendant attaches two declarations to her Memorandum in Support of Motion to Dismiss:  (1) Decl. Delaine Hill ("Hill Decl."); and, (2) Decl. Beverly Singleton ("Singleton Decl.").  (Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem. Supp."), ECF Nos. 7-1, 7-2.)

Defendant attaches seven exhibits to the Hill Decl.:  (A) Exhibit A:  Price's September 1998 Equal Employment Opportunity ("EEO") Complaint; (B) Exhibit B:  Price's March 1999 EEO Complaint; (C) Exhibit C:  the May 25, 2001 Equal Employment Opportunity Commission ("EEOC") Settlement Agreement regarding the 1998 and 1999 EEO Complaints; (D) Exhibit D:  the June 20, 2001 EEOC dismissal of the 1998 and 1999 EEO Complaints; (E) Exhibit E:  Price's December 2000 EEO Complaint; (F) Exhibit F:  the February 2002 decision from the Department of Justice ("DOJ") dismissing the 2000 EEO Complaint; and, (G) Exhibit G:  the August 13, 2002 decision from the EEOC affirming the dismissal of the 2000 EEO Complaint.  (Hill Decl. Exs. A–G, ECF No. 7-1.)  The Court notes that Exhibit F, the February 2002 decision, evinces two February dates:  February 19, 2002 and February 25, 2002. (*See* Ex. F.) The display of two different February dates on Exhibit F does not alter the Court's analysis.

Finally, Price includes four attachments to his Response to Defendant's Motion to Dismiss:  (1) Attach. 1:  documents from the Federal Labor Relations Authority regarding Price's hearing before an administrative law judge in his charge against the union; (2) Attach. 2:  an "Affidavit" of Samuel D. Engle, Jr., offered pursuant to an investigation conducted by the Federal Service Labor-Management Relations Act; (3) Attach. 3:  email correspondence between Price and Wanda Dorsey, the EEO Counselor for Petersburg, Virginia Federal Correctional Complex ("FCC Petersburg"); and, (4) Attach. 4:  docket sheet from Price's 1999 civil action in this Court, Case number 3:99cv00382.  (Pl.'s Resp. Attach. 1–4, ECF Nos. 21-2 through 21-5.)  For ease of reference, the Court employs the page numbers utilized by the CM/ECF docketing system when citing to the attachments to Price's Response.

documents. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)).

## II.  Procedural and Factual Background

### A.      Summary of Allegations in the Complaint

The Complaint addresses alleged acts of discrimination and breaches of a collective bargaining agreement in the context of Price's employment as a correctional counselor with the BOP at FCC Petersburg.  Construing Price's Complaint liberally, the Court interprets the Complaint to raise three claims:

Claim I:      In utilizing the Affirmative Employment Program ("AEP"),[9] the BOP breached the Collective Bargaining Agreement's ("CBA")[10] directive not to restrain employees' exercise of their right to fair treatment and freedom from discrimination, (Compl. ¶¶ 45, 154(1));

Claim II:     Discrimination on the basis of race, gender, and sexual orientation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(a),[11] (Compl. ¶¶ 149, 154(2)); and,

---

[9] According to the Complaint, the "[AEP] is used to effect and/or regulate the hiring processes within the [BOP]." (Compl. ¶ 63.)  The AEP "represents the following groups of people, Women, Blacks, Hispanics, Asian/Pacific Islanders, Native American Indians, disabled veterans, minority groups, (such as *Lesbian, Gay, Bisexual, and Transgender individuals*) and people with disabilities." (*Id.* at ¶ 66 (some punctuation corrected).)  The AEP "target[s] certain minorities and genders for specific vacancies, thus showing that everyone is not being treated equally and some groups are being discriminated against." (*Id.* at ¶ 70.)  Price contends "Heterosexual, Caucasian (White) Males have been denied and are not [sic] being denied representation in and by the [AEP] within the [BOP]." (*Id.* at ¶ 64.)

[10] The March 9, 1998 Master Agreement (Compl. Ex. 6) is the CBA applicable to the time identified in the Complaint. (*See* Compl. ¶ 23.)  For ease of reference, the Court will refer to this Master Agreement as the CBA.

[11] Price cites both 42 U.S.C. § 2000e-2 and § 2000e-16 in his Complaint.  As an employee of the BOP at FCC Petersburg, § 2000e-16(a) governs Price's discrimination claim against his federal agency employer.
Section 2000e-16(a) provides in pertinent part: "All personnel actions affecting employees . . . in executive agencies as defined in [5 U.S.C. § 105] . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a).  "'Executive agency' means an Executive department, a Government corporation, and an

Claim III:     Retaliation for prior EEOC complaint, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a),[12] (Compl. ¶¶ 130, 156).

On May 30, 2014, Price submitted a document entitled "[A]ttempt at Informal Resolution" dated May 29, 2014 ("Informal Grievance"), addressing it to FCC Petersburg Warden Eric D. Wilson ("Warden Wilson"). (Compl. ¶ 24; id. Ex. 2, ECF No. 1-2.) The Informal Grievance states that Price "[has] been denied [his] rights under the [CBA]." (Id. Ex. 2 at 2.) Price avers that he has "not been treated fairly as outline[d] by the [CBA]; nor [has] [he] been free of discrimination as outline[d] by the [CBA]." (Id.)

In the Informal Grievance, Price elaborates that, as a heterosexual, Caucasian male, the BOP's use of the AEP discriminates against him regarding internal advancement:

> As a Heterosexual, Caucasian (White) Male I am being discriminated against by the Agency known as The United States Department of Justice, The Federal Bureau of Prisons thru its use of the [AEP] . . . in the hiring processes within the [BOP].

> I am a Heterosexual, Caucasian (White) Male. I am being denied equal treatment as it relates to promotional employment or job advancement process within the [BOP].

> Heterosexual, Caucasian (White) Males have been denied and are being denied representations in and by the [AEP] . . . because we are not an identified minority group.

---

independent establishment." 5 U.S.C. § 105. The BOP is an agency of the Department of Justice within the Executive department. The head of DOJ is the proper defendant in this case. 42 U.S.C. § 2000e-16(c) (in a federal employee's Title VII suit, "the head of the department, agency, or unit, as appropriate, shall be the defendant".).

[12] The United States Court of Appeals for the Fourth Circuit has held that a federal employee may raise a Title VII retaliation claim. *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011). Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his [or her] employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).
      For ease of reference, the Court refers to Price's discrimination and retaliation claims as his Title VII claims.

> I have been denied and are [sic] being denied equal protection . . . due to exclusion of Heterosexual, Caucasian (White) Males as a group by the [AEP] . . . within the [BOP].
>
>     . . . .
>
> The advantage given to minorities by the [AEP] in the promotion and hiring process[13] creates a disparity in treatment towards Heterosexual, Caucasian (White) Males who the program does not represent.
>
>     . . .
>
> The use of [the AEP] in the promotional employment process within the [BOP] discriminates against Heterosexual, Caucasian (White) Males.

(*Id.* at 3, 5.) Price demands that the BOP "remove[ ]" the AEP because it "has created discrimination and violates the law and the natural right of all men and women to be treated equally." (*Id.* at 7.) The Informal Grievance does not identify a specific instance when the BOP's use of the AEP resulted in the discriminatory treatment of Price.

On June 6, 2014, Price received an email from FCC Petersburg's Human Resources Department with Warden Wilson's response to his Informal Grievance ("Response to Informal Grievance") attached to the email. The Response to Informal Grievance, dated June 5, 2014, directs Price to "contact the EEO Counselor within 45 days of the alleged discrimination" "[i]f [he] believe[s] [he] [has] been subjected to discrimination." (Compl. Ex. 3 at 3.) The Response to Informal Grievance identifies Wanda Dorsey as the EEO Counselor for FCC Petersburg and contains Dorsey's email address and telephone number.

On June 9, 2014, Price submitted a Formal Grievance. The Formal Grievance repeats verbatim the allegations that Price made in the Informal Grievance regarding the BOP's use of

---

[13] It seems that Price's Complaint concentrates on promotional opportunities rather than initial hiring decisions. Price's Informal Grievance notes that he "understands[s] that a diverse work force is a good thing[,] but any further use of the [BOP's AEP] outside of the initial hiring process is discriminatory." (Compl. Ex. 2 at 5.) Whether Price addresses hiring decisions, promotional decision-making, or both, does not alter this Court's determination.

the AEP in violation of the CBA and the AEP's discriminatory impact. In the Formal Grievance, in addition to the removal of the AEP, Price requested remedies including attorneys' fees, damages, and other injunctive relief:

> [T]hat all attorney, legal fees and expenses incurred in the processing of this grievance will be reimbursed by the agency. That a cease and desist order be issued if applicable. . . . That suitable compensation [is] granted (specifically, but not limited to, Remedies to Include Compensatory & Punitive Damages as outline[d] by EEOC guidelines, a promotion of 3 GL-grade levels at their current job, . . . [and] Back pay . . . .

(Ex. 4 at 7–8.) Like the Informal Grievance, the Formal Grievance does not identify a specific time when the BOP used the AEP in a way that discriminated against Price.

On June 9, 2014, the same day Price submitted his Formal Grievance, the Local Union President Derrick Bradden removed Price as Union representative. On June 11, 2014, Price received a response to his Formal Grievance from Warden Wilson ("Response to Formal Grievance"). The Response to Price's Formal Grievance denied it, and directed Price to contact EEO Counselor Dorsey a second time.

On June 15, 2014, Price contacted Dorsey via email stating: "I want to file a formal EEO Complaint. [P]lease forward me the documentation needed to do so." (Pl.'s Resp. Attach. 3 at 3, ECF No. 21-4.) On June 16, Price sent Dorsey an email stating "Please see attached Microsoft Word Document. This is a[n] EEO complaint of non – representation and discrimination of the [AEP] and its use in the hiring practices in government employment." (Pl.'s Resp. Attach. 3 at 4, ECF No. 21-4.)[14]

On June 17, 2014, Dorsey emailed Price the "EEO forms needed to start the informal counseling process." (Compl. Ex. 27, ECF No. 1-27.) She instructed Price to "review, sign and

---

[14] Price's submissions do not include the so-called EEO Complaint or "attached Microsoft Word Document" referenced in the June 16, 2014 email. Defendant has no record of any June 16, 2014 EEO Complaint. (Hill Decl. ¶¶ 9–10, ECF No. 7-1.)

send the completed forms" back to her "within seven business days." (*Id.*) Price never returned the forms, never followed through with informal counseling, and never filed an EEO complaint regarding these allegations. Price also never filed a Merit Systems Protection Board ("MSPB") appeal.

On July 9, 2014, after speaking with Price on July 7, 2014, Dorsey emailed Price to confirm that he "filed with the Union and wanted to withdraw and closeout [his] informal counseling contact." (Pl.'s Resp. Attach. 3 at 4, ECF No. 21-4.) Price responded that he "chose[] to file and ha[s] filed a grievance" and "no long[er] [has] the need to file an EEO complaint." (*Id.* Attach. 3 at 1.) Within minutes, Dorsey responded to Price that "Effective [July 9, 2014,] your informal counseling contact is now closed." (*Id.* Attach. 3 at 1.)

## B.   Procedural History

On September 5, 2014, Price filed his Complaint against Defendant seeking compensatory damages "in the form of a pay grade adjustment . . . with back pay," $300,000 in punitive damages, "all attorney, legal fees and expenses," and other relief. (*See generally* Compl. ¶¶ 1, 154–57.) On February 27, 2015, Defendant filed a Motion to Dismiss. Price responded, and Defendant replied. Price and Defendant also submitted additional briefing.

## III.  Analysis

The Complaint lacks coherence and contains sprawling assertions lacking linear connection, factually or legally. For the reasons discussed below, Price fails to satisfy his burden to demonstrate the existence of this Court's limited federal subject matter jurisdiction. *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citations omitted). Therefore, the Court will grant the Motion to Dismiss and dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

**A.      No Subject Matter Jurisdiction Exists Over Price's Claim for Breach of the CBA Because No Waiver of Sovereign Immunity Applies**

The Court lacks subject matter jurisdiction over Price's claim for breach of the CBA,

meaning the Court must dismiss Claim I.  Absent an identified waiver, sovereign immunity bars

Price's claim for breach of the CBA against Defendant in her official capacity. *Harrison*, 2014

WL 29042, at *3.

**1.      Sovereign Immunity Bars Claim I Unless a Statutory Waiver Applies**

A suit against Defendant in his or her official capacity is a suit against the United States.

*Kentucky*, 473 U.S. at 165–66.  "It is well settled that the United States, as sovereign, is immune

from suit except to the extent that it has consented to be sued by statute." *Harrison*, 2014 WL

29042, at *2 (listing cases).  Statutory waivers of sovereign immunity "cannot be implied but

must be unequivocally expressed." *Id.* (citation omitted).  "Moreover, they must be construed

strictly in favor of the sovereign and may not be enlarged beyond what the statutory language

requires." *Id.* (citation omitted).  "The terms of the waiver define the Court's jurisdiction to

entertain the suit." *Id.* (citation omitted).  "Absent a waiver, sovereign immunity shields the

Federal Government and its agencies from suit.  Sovereign immunity is jurisdictional in nature.

Indeed, the terms of [the United States'] consent to be sued in any court define that court's

jurisdiction to entertain the suit." *Id.* at *3 (alteration in original) (citation omitted).

Three statutes encompass the primary avenues for waiver of sovereign immunity in civil

actions against the United States.  First, the Federal Tort Claims Act ("FTCA") waives the

United States's sovereign immunity for monetary claims brought by individuals injured by

certain tortious conduct of federal employees. 28 U.S.C. § 2674;[15] 28 U.S.C. § 1346(b)(1);[16] *Harrison*, 2014 WL 29042, at *4.

The Tucker Act -- consisting of the so-called "Little Tucker Act" and the "Big Tucker Act" -- provides a second basis for waiving sovereign immunity. The Little Tucker Act permits a district court to exercise jurisdiction over non-tort claims against the United States for money judgments not exceeding $10,000. 28 U.S.C. § 1346(a)(2);[17] *Harrison*, 2014 WL 29042, at *3. "For these claims, district courts have concurrent jurisdiction with the Court of Federal Claims." *Harrison*, 2014 WL 29042, at *3; *see also* 28 U.S.C. § 1346(a)(2). When a plaintiff claims more than $10,000 in damages, however, the Big Tucker Act grants the Court of Federal Claims

---

[15] "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . . " 28 U.S.C. § 2674.

[16] Section 1346(b)(1) describes FTCA jurisdiction and provides in pertinent part:

[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

[17] The Little Tucker Act states in pertinent part:

(a) The district court shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
     . . . .
     (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States.

28 U.S.C. § 1346(a)(2).

exclusive jurisdiction over those non-tort money claims against the United States.  28 U.S.C. § 1491;[18] *Harrison*, 2014 WL 29042, at *3 (distinguishing Little and Big Tucker Acts).  "With few exceptions not relevant here, Tucker Act jurisdiction covers only claims for monetary relief, not injunctive relief, and special venue requirements apply to claims under the Little Tucker Act." *Harrison*, 2014 WL 29042, at *3 (citing 28 U.S.C. 1402(a); *Richardson v. Morris*, 409 U.S. 464, 465 (1973) ("[T]he [Tucker] Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States.")).

Finally, the Administrative Procedure Act ("APA") constitutes the third statute that "waives sovereign immunity for certain actions against the government:  'A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.'" *Harrison*, 2014 WL 29042, at *3 (quoting 5 U.S.C. § 702).  "The APA, however, applies only to claims 'seeking relief other than money damages' and does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Id.* (quoting 5 U.S.C. § 702).

    2.    **No Statutory Waiver of Sovereign Immunity Applies to Claim I**

In this case, none of the above waivers of sovereign immunity applies to Price's claim for breach of the CBA.  First, the FTCA does not apply to Price's non-tort breach of the CBA claim. Second, Price does not seek monetary damages with respect to Claim I, making the limited

---

[18] The Big Tucker Act addresses jurisdiction as follows:  "The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1).

waivers of sovereign immunity codified in the Little Tucker and Big Tucker Acts inapplicable.[19]

Finally, although Price seeks a "find[ing]" that Lynch breached the CBA, (Compl. ¶ 154(1)),

such a request does not constitute the type of injunctive relief for which the APA could provide a

limited waiver of sovereign immunity.[20]

Without more, Price contends that "[t]his Court has jurisdiction." (Compl. ¶ 5.) Such

an unsupported proposition cannot satisfy his burden "to prove that federal jurisdiction is

proper."[21] *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338 (citations omitted). Accordingly,

in the absence of any statutory waiver, sovereign immunity bars Price's claim for breach of the

CBA. Therefore, this Court lacks subject matter jurisdiction over Claim I and will dismiss it.

---

[19] Price avers that he does not seek monetary damages with respect to Claim I, but rather "has only requested that the [C]ourt find that the [BOP] did in fact breach the [CBA]." (Pl.'s Resp. 4.) Given Price's status as a federal employee, any request for monetary relief regarding his claim for breach of the CBA would likely fail as a matter of law:

> [T]o the extent that the Little Tucker Act, 28 U.S.C. § 1346(a)(2), waives sovereign immunity and authorizes federal district courts to hear contract claims against the [United States] of $10,000 or less, the [Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101, *et seq.*] in effect trumps that consent to suit and prevents federal district courts from exercising jurisdiction over claims for breach of a collecting bargaining agreement between a union and an agency of the [United States]."

*Rivera v. Holder*, No. 3:10cv544, 2010 WL 5187929, at *3 n.7 (E.D. Va. Dec. 14, 2010) (citing cases).

[20] As a federal employee, Price cannot use the APA to challenge the BOP's employment actions. *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009); *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000) ("Congress intended that the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship.") The Court discusses the CSRA statutory process that would be available to Price in lieu of the CBA's negotiated grievance procedure in Part III.B.2, *infra*.

[21] Price suggests in briefing that 42 U.S.C. § 1981a(b)(3) constitutes a waiver of sovereign immunity. However, the statute, which outlines limitations on damages in employment discrimination cases, does not constitute a waiver of sovereign immunity for Price's breach of the CBA contract claim.

**B.    No Subject Matter Jurisdiction Exists Over Price's Title VII Claims Because Price Failed to Exhaust His Administrative Remedies**

This Court lacks subject matter jurisdiction over Price's Title VII claims (Claims II and

III) because Price did not exhaust his administrative remedies. *See Jones v. Calvert Grp., Ltd.*,

551 F.3d 297, 300 (4th Cir. 2009).

**1.    Federal Employees Must Exhaust Their Administrative Remedies Before Filing Title VII Employment Discrimination Claims in Federal Court**

Title VII "creates a right of action for both private-sector and certain federal employees

alleging employment discrimination on the basis of race, color, religion, sex, or national origin."

*Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006) (footnotes omitted) (citing 42 U.S.C.

§§ 2000e-5(f)(1) (private-sector employees), 2000e-16(c) (federal employees)).  "All employees,

private-sector or federal, alleging such discrimination must, however, exhaust their

administrative remedies before exercising this right." *Id.* at 415–16 (citing cases).  "This

requirement exists to minimize judicial interference with the operation of the federal

government.  It also affords an agency the opportunity to right any wrong it may have

committed." *Austin v. Winter*, 286 F. App'x 31, 35 (4th Cir. 2008) (citations omitted) (internal

quotation marks omitted).  The failure to exhaust deprives this Court of subject matter

jurisdiction. *Jones*, 551 F.3d at 300.

**2.    Specific Considerations When a Collective Bargaining Agreement Exists**

**a.    Irrevocable Election of Procedure**

When a federal employee such as Price also is subject to a collective bargaining

agreement, the CSRA and Federal Service Labor-Management Relations Act, 5 U.S.C. §§ 7101–

7135, ("the FSLMRA")[22] permit a federal employee "aggrieved" by discrimination in the workplace to "raise the matter under a statutory procedure [such as the EEO complaint process] or the negotiated grievance procedure [provided for in the applicable collective bargaining agreement], but not both." 5 U.S.C. § 7121(d);[23] *see also* 29 C.F.R. § 1614.301(a).[24]

---

[22] The FSLMRA, Title VII of the CSRA, "created a statutory scheme governing labor relations between federal agencies and their employees." *Nat'l Ass'n Gov't Emps. v. Fed. Labor Relations Auth.*, 830 F. Supp. 889, 891 (E.D. Va. 1993).

[23] Section 7121(d) of the FSLMRA provides in full:

> An aggrieved employee affected by a prohibited personnel practice under [5 U.S.C. § 2302(b)(1)] which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his [or her] option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the [MSBP] to review the final decision pursuant to [5 U.S.C. § 7702] in the case of any personnel action that could have been appealed to the [MSBP], or, where applicable, to request the [EEOC] to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the [EEOC].

5 U.S.C. § 7121(d).
   Section 2302(b)(1) prohibits discrimination against any employee "on the basis of race, color, religion, sex, or national origin, as prohibited under [Title VII]." 5 U.S.C. § 2302(b)(1)(A). Section 7702 sets forth procedures for appeals to the MSPB. "The MSPB has jurisdiction to hear appeals of certain adverse federal employment actions, such as removal, suspensions lasting more than 14 days, and constructive discharge." *Rivera*, 2010 WL 5187929, at *4 n.8 (citing 5 U.S.C. §§ 7512–13).

[24] A "person . . . employed by an agency subject to 5 U.S.C. § 7121(d) and . . . covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure" who "wish[es] to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both." 29 C.F.R. § 1614.301(a).

A federal employee makes his or her election to proceed under either the statutory procedure or the negotiated grievance procedure "at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, *whichever event occurs first*." 5 U.S.C. § 7121(d) (emphasis added). Because the federal employee cannot pursue both statutory and negotiated grievance procedures, the election to proceed under either is binding. *Id.*; *see also Wilson v. Hagel*, No. 5:13cv365, 2014 WL 3738530, at *3 (E.D.N.C. July 29, 2014) ("The employee cannot pursue both procedures and the election, once made, is irrevocable."); *Moreno v. McHugh*, No. ELH-10-2511, 2011 WL 2791240, at *9 (D. Md. July 14, 2011) ("Notably, the employee must choose between the statutory or grievance process; the employee may not pursue both remedies. And, the election between a statutory or a negotiated grievance procedure is irrevocable. This means that an employee is bound by [his or] her initial election." (citations omitted) (internal quotation marks omitted)).

A federal employee "is deemed to have irrevocably elected [his or] her option when [he or] she either (1) timely initiates an action under the applicable statutory procedure or (2) timely files a grievance in writing, whichever occurs first." *Wilson*, 2014 WL 3738530, at *3; *see also Moreno*, 2011 WL 2791240, at *9 ("[A]n employee covered by a collective bargaining agreement with an applicable grievance process may elect one of two options, but not both: (1) [he or] she may file a grievance pursuant to [his or] her union's negotiated grievance; or (2) [he or] she may make a statutory election, by filing a formal EEO complaint . . . .").

"An election to proceed under [the statutory EEO complaint process] is indicated only by the filing of a written complaint; use of the pre-complaint process . . . does not constitute an election for purposes of this section." 29 C.F.R. § 1614.301(a). "An aggrieved employee who

17

files a complaint under [the statutory EEO complaint process] may not thereafter file a grievance on the same matter." *Id.* Likewise "[a]n election to proceed under a negotiated grievance procedure is indicated by the filing of a timely written grievance." *Id.*

Importantly, a federal employee pursuing a claim under either the statutory procedure or the negotiated grievance procedure must exhaust his or her administrative remedies before raising that claim in federal court. *See Laber*, 438 F.3d at 415; *Zuzul v. McDonald*, --- F. Supp. 3d ---, No. 1:14cv251, 2015 WL 1474924, at *7 (M.D.N.C. Mar. 31, 2015) (citations omitted) (describing exhaustion in the negotiated grievance procedure context); *Moreno*, 2011 WL 2791240, at *8–9 (same); *Campbell v. Green*, No. 1:07cv675, 2009 WL 1255113, at *5 (E.D. Va. May 5, 2009) (describing exhaustion of administrative remedies by federal employee in statutory EEO complaint process), *aff'd*, 353 F. App'x 879 (4th Cir. 2009).

**b.    Steps to Exhaust Negotiated Grievance Procedure of Pure Discrimination Claim**

Price elected to pursue his employment discrimination claims through the negotiated grievance procedure when he filed his Formal Grievance on June 9, 2014, before he submitted any EEO complaint. (Compl. Ex. 4, ECF No. 1-4; 5 U.S.C. § 7121(d).)   A grievant such as Price pursuing a "pure discrimination" claim[25] exhausts the negotiated grievance procedure when he or she:  (1) appeals an arbitration decision to the EEOC; or, (2) in a case where

---

[25] Price's Formal Grievance "involves claims of discrimination only," making it a "pure discrimination" claim. *Moreno*, 2011 WL 2791240, at *8 n.16 (citation omitted); *see also* Pl.'s Sur-Reply 4 ("Plaintiff is not raising a personnel issue, but a discrimination issue. . . . [I]t is not a mixed claim.").

In contrast, a "mixed case" would be a "complaint of employment discrimination filed with a federal agency based on race, color, [or] sex . . . related to or stemming from an action that can be appealed to the [MSPB]. The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address." 29 C.F.R. § 1614.302(a); *see also Moreno*, 2011 WL 2791240, at *8

arbitration is not available, appeals the agency's final decision to the EEOC.[26] 42 U.S.C.

§ 2000e-16(c);[27] *cf. Fernandez v. Chertoff,* 471 F.3d 45, 54 (2d Cir. 2006) ("[I]n a pure

discrimination case, an employee who chooses the negotiated grievance procedure must appeal

the arbitrator's award to the EEOC before bringing suit."); *Koch,* 934 F. Supp. 2d at 269 (finding

federal employee failed to exhaust administrative remedies of his Title VII claim when, after

electing to pursue the negotiated grievance procedure, the employee did not appeal the agency's

final decision to the EEOC in case where the union and agency declined to invoke arbitration);

*Moreno,* 2011 WL 2791240, at *8 ("Exhaustion of the negotiated grievance process generally

includes referral of the grievance to arbitration and the appeal of the arbitration decision, either

to the EEOC or the [MSPB] . . . ."); *Smith v. Jackson,* 539 F. Supp. 2d 116, 130 (D.D.C. 2008)

---

n.16 (suggesting in dicta that retaliatory termination for whistleblower activity could be a mixed case because the employment action might not stem from discrimination prohibited by Title VII).

[26] As is the case here, some collective bargaining agreements grant only the agency-employer or the union the ability to pursue a claim to arbitration. *See Moreno,* 2011 WL 2791240, at *13; Compl. Ex. 6 ("CBA") Art. 31, § g(1)–(2), ECF No. 1-6. When the agency-employer and union decline to pursue a claim to arbitration, the grievant-employee must appeal the agency-employer's final decision to the EEOC in order to exhaust his or her administrative remedies. *Koch v. Walter,* 934 F. Supp. 2d 261, 269 (D.D.C. 2013).

[27] Section 2000e-16(c) provides in pertinent part:

Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in [42 U.S.C. § 2000e-5(a)], or by the [EEOC] upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to [42 U.S.C. § 2000e-5(a)], . . . or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the [EEOC] on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in [42 U.S.C. § 2000e-5] . . . .

42 U.S.C. § 2000e-16(c).

("[J]udicial review is only available to an employee alleging a pure discrimination claim after he [or she] has exhausted his [or her] administrative remedies in dealing with his [or her] grievance, and appealed the final agency action on his [or her] grievance to the EEOC."); *Johnson v. Peterson*, 996 F.2d 397, 401 (D.C. Cir. 1993) ("The employee [with a pure discrimination claim] who chooses the negotiated procedure may appeal the arbitrator's decision to the EEOC. Only after the EEOC has rendered a decision or failed to do so . . . may the employee use [42 U.S.C. §] 2000e-16(c) and initiate suit in district court.").

### 3. After Electing the Negotiated Grievance Procedure, Price Failed to Exhaust his Administrative Remedies

Price failed to exhaust his administrative remedies because, after electing to pursue his pure discrimination claims using the CBA's negotiated grievance procedure, he did not complete that process. 42 U.S.C. § 2000e-16(c); *Fernandez*, 471 F.3d at 58; *Johnson*, 996 F.2d at 401; *Koch*, 934 F. Supp. 2d at 269; *Moreno*, 2011 WL 2791240, at *8 (citation omitted). Therefore, this Court must dismiss Price's Title VII claims for lack of subject matter jurisdiction. *Jones*, 551 F.3d at 300–01.

### a. The CBA's Grievance and Arbitration Procedures

Price's June 9, 2014 Formal Grievance constituted his election to pursue his employment discrimination claims through the negotiated grievance procedure because he had not yet submitted any EEO complaint. (Compl. Ex. 4, ECF No. 1-4; 5 U.S.C. § 7121(d).) Once Price elected this procedure, he remained obligated to exhaust the negotiated grievance procedure before raising any Title VII claim in federal court. *Laber*, 438 F.3d at 415; *Zuzul*, 2015 WL 1474924, at *7; *Moreno*, 2011 WL 2791240, at *8.

Article 31 of the CBA provides "[a]ny employee" with "the right to file a formal grievance with or without the assistance of the Union." (CBA Art. 31, § c.) "Grievances must

be filed within forty (40) calendar days of the date of the alleged grievable occurrence." (*Id.* Art. 31, § d.) "Formal grievances must be filed on Bureau of Prisons 'Formal Grievance' forms and must be signed by the grievant or the Union." (*Id.* Art. 31, § f.) "After a formal grievance is filed, the party receiving the grievance will have thirty (30) calendar days to respond to the grievance." (*Id.* Art. 31, § g.) "[I]f the final response is not satisfactory to the grieving party and that party desires to proceed to arbitration, the grieving party may submit the grievance to arbitration under Article 32 of [the CBA] within thirty (30) calendar days from receipt of the final response; and" "a grievance may only be pursued to arbitration by the Employer or the Union." (*Id.* Art. 31, § g(1)–(2).)

Article 32 of the CBA delineates the procedures for arbitration, including notifying the other party in writing of the intent to invoke arbitration and requesting that the Federal Mediation and Conciliation Service ("FMCS") submit a list of arbitrators. (CBA Art. 32, §§ a–b.) "The arbitrator shall be requested to render a decision as quickly as possible, but in any event no later than thirty (30) calendar days after the conclusion of the hearing, unless the parties mutually agree to extend the time limit." (*Id.* Art. 32, § g.)

**b.    Price's Actions Regarding Exhaustion**

Price complied with Article 31's requirements to file his grievance on the official BOP form and to direct his grievance to the appropriate individual, Warden Wilson. (Compl. Ex. 4.) Warden Wilson responded within the required 30 calendar days. (Compl. Ex. 5.) Upon receipt of the final, unsatisfactory response (here, Warden Wilson's June 11, 2014 Response to Formal Grievance), the CBA required that the "the grieving party" "submit the grievance to arbitration under Article 32 of [the CBA] within thirty (30) calendar days from receipt of the final response." (CBA Art. 31, § g(1).)

21

The CBA permits only the employer (in this case the BOP) or the Union to submit a grievance to arbitration. (*Id.* Art. 31, § g(2).) The deadline for the BOP or the Union to submit Price's Formal Grievance to arbitration expired on July 11, 2014. Neither the Union nor the BOP invoked arbitration regarding Price's Formal Grievance.[28] (Compl. ¶¶ 40–41.) While Price could not have submitted his grievance to arbitration individually, Price also did not appeal the BOP's denial of his grievance to the EEOC. (Hill Decl. ¶¶ 9–10; Singleton Decl. ¶ 7 (discussing MSBP appeal).)

> ### c.   Price Did Not Exhaust Because He Did Not Appeal an Arbitration Award or the BOP's Final Decision to the EEOC

Price did not exhaust the negotiated grievance procedure because he did not appeal the BOP's denial of his formal grievance or an arbitration decision to the EEOC, a necessary step to complete exhaustion. 42 U.S.C. § 2000e-16(c); *Johnson*, 996 F.2d at 401; *Koch*, 934 F. Supp. 2d at 269; *Moreno*, 2011 WL 2791240, at *8 (citation omitted);[29] *Smith*, 539 F. Supp. 2d at 131–

---

[28] Rather than eventually seeking arbitration on Price's behalf, on June 9, 2014, the same day Price submitted his Formal Grievance, union leaders notified others that Price would no longer serve as the Union's shop steward, "Effective Immediately." (Compl. ¶ 155(1); *id.* Ex. 22, ECF No. 1-22.).

[29] In *Moreno*, the plaintiff, a former federal employee at the Child Development Center I ("CDC") at Fort Meade, Maryland, alleged employment discrimination on the basis of race, color, and national origin, in violation of Title VII, and on the basis of a hearing impairment, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, following her termination after an incident where a child was injured at the CDC. 2011 WL 2791240, at *1. The plaintiff elected to raise her claims through the negotiated grievance procedure but did not pursue her grievance to arbitration. *Id.* at *4, *13. The *Moreno* court found it lacked subject matter jurisdiction over the plaintiff's claims because she failed to exhaust her administrative remedies. *Id.* at *13 ("Because plaintiff elected to pursue her claim via the negotiated grievance procedure, but did not pursue it to its conclusion, she failed to exhaust her remedies."). Importantly, the collective bargaining agreement at issue in *Moreno*, like Price's CBA, provided that the "Union or the Employer may refer" a "grievance . . . not satisfactorily settled." *Id.*; *see* CBA Art. 31, § g(2) ("[A] grievance may only be pursued to arbitration by the Employer or the Union.").

32.[30] Because Price did not exhaust his administrative remedies, the Court lacks subject matter jurisdiction over Price's Title VII claims. *Jones*, 551 F.3d at 300. In the absence of subject matter jurisdiction, this Court must dismiss Claims II and III.

### C.   The Court Will Not Grant Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Although motions to amend should be granted liberally, this Court declines to give Price leave to amend because amendment in this case would be futile. Price cannot correct existing jurisdictional defects through amendment. *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (holding that a district court may deny leave to amend when the proposed amended complaint fails to satisfy the requirements of the Federal Rules of Civil Procedure because the amendment would not survive a motion to dismiss, rendering any attempt to amend futile).

---

[30] In *Smith*, plaintiff, a former federal employee at the Department of Housing and Urban Development, alleged retaliation, a hostile work environment and disparate treatment based on his race and age, in violation of Title VII, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). 539 F. Supp. 2d at 119. Smith contended that his former supervisor attacked his performance, shouted at him, threatened disciplinary action, revoked a compressed work schedule, issued a proposal to suspend him, and physically blocked his exit from the office. *Id.* Smith filed a grievance, but neither Smith nor his Union pursued his grievance beyond the first step. *Id.* at 126, 132. The court concluded that Smith did not "exhaust[ ] his administrative remedies" as to certain claims and dismissed them for lack of subject matter jurisdiction. *Id.*

### IV.  Conclusion

For the foregoing reasons, the Court will GRANT Defendant's Motion to Dismiss and

DISMISS THE COMPLAINT for lack of subject matter jurisdiction.  (ECF No. 6.)

An appropriate Order shall issue.

_____ /s/ _____
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9-17-15

24